UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| J.L.J.  (XXX-XX-4839) | CIVIL ACTION NO. 22-cv-450 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| COMMISSIONER OF SOCIAL SECURITY | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

J.L.J. ("Plaintiff) was born in 1959.  He has a high school education and previously worked as a garbage collector, a housekeeper in a casino, and a fairgrounds parking lot signaler.  He filed an application for Title II disability benefits and alleged an onset date of September 15, 2014 based on hypertension, a stroke affecting his left arm, a lower back problem, insomnia, major depressive disorder, generalized anxiety disorder, and arthritis of the left ankle, knees, and left foot.  The relevant period for assessing his disability status is between the alleged onset date of September 15, 2014 and December 31, 2018, which was the date he was last insured under Title II.

Plaintiff's application was denied initially and on reconsideration.  He requested a hearing before an Administrative Law Judge ("ALJ").  ALJ Michael Mannes held a hearing and issued a decision finding that Plaintiff was not disabled.  The Appeals Council denied a request for review, which made the ALJ's decision the Commissioner's final agency decision.

Plaintiff, represented by counsel, then filed this civil action to seek the limited judicial review that is allowed by 42 U.S.C. § 405(g). Plaintiff alleges that (1) the ALJ failed to properly evaluate and explain his analysis of the opinion of the agency's psychological evaluator and (2) the ALJ erred in rejecting Plaintiff's statements regarding his use of a cane and lower extremity swelling. For the reasons that follow, it is recommended that the Commissioner's decision be affirmed.

**Relevant Evidence**

**A. Hearing Testimony**

Plaintiff testified at a telephone hearing that he completed high school and worked as a custodian. Before 2008, he was a caregiver for his sister. Tr. 48. He next worked as a parking lot attendant. Tr. 47. From 2008 to 2013, Plaintiff was a custodian in a hospital. Tr. 46. He worked for the Shreveport trash department for a month in 2013 until he suffered a heat stroke, which made him unable to continue working that job. Tr. 45-46. His last job was at a casino in 2013. He had that job for a week but quit because he had a problem with another worker. Tr. 45.

Plaintiff testified that he had a small stroke in 2015 and another in 2017. In January of 2020, he had a more severe stroke. Since then, he has had pain in his left arm and left leg. Tr. 51-52. He started having pain in his left ankle in 2017, and that pain worsened after the 2020 stroke. Tr. 13. He also began having problems with swelling in his left foot. He needs to recline and elevate his legs to alleviate the swelling. Tr. 61-62.

Plaintiff testified that he has mental health issues, including insomnia and hearing voices. He stated that seeing a psychiatrist helped with these issues, but he stopped going

to the psychiatrist in 2018. Tr. 53-54. He takes medication for insomnia and high blood pressure. Tr. 53. His insomnia causes him to sleep during the day. Tr. 62.

Plaintiff stated that the furthest he was able to walk was about four blocks from his house to the store. The last time he walked to the store was about a month before the hearing, and he had to stop to rest. He stated that he has not been able to make that walk since. Tr. 56. He can lift 30 pounds at most. He bathes and dresses himself, prepares meals for himself, and does household chores. Tr. 57. He does not own a car, but he would be able to drive. Tr. 58. He uses a cane occasionally when he leaves his house for long periods of time. Tr. 60.

Vocational Expert ("VE") Melissa Brassfield testified at the hearing. The ALJ asked her to assume a person with Plaintiff's age, education, and work history. He also asked the VE to assume certain hypothetical persons with various abilities and limitations. Relevant here, he asked questions about a person who could perform work at the light and medium exertional levels, subject to several physical limitations regarding climbing, reaching, balancing, handling, etc. The person could understand, remember, and carry out simple tasks with routine supervision, frequently interact with supervisors and coworkers, occasionally interact with the public, and respond appropriately to changes in a work setting. The VE answered that the person could perform Plaintiff's past work as a parking lot signaler. The person could also perform other jobs such as housekeeping/cleaner, small product assembler, or sub-assembler. Tr. 65-69.

### B. Medical Records

Records from Ochsner/LSU Health Shreveport dated December 6, 2017, reflect that Plaintiff was seen in the emergency department by Kevin Holland R.N., and Eric Von Burton, M.D., with symptoms that included tongue thickness, extremity weakness, and difficulty walking. Tr. 374-382. Past medical history included a diagnosis of schizophrenia, hypertension, and 2015 MRI evidence of microbleed in the brain in the right tectum pons. Tr. 375, 377.

On October 29, 2018, Plaintiff was seen by Claudia Shivers, L.P.N., and Kevin James Carter, M.D., for schizophrenia without current hallucinations. Tr. 363-367. Plaintiff's height/ratio yielded a BMI of 31.9. Tr. 365. The medical overview documented a history of cerebrovascular accident on October 15, 2015, undifferentiated schizophrenia first diagnosed on November 4, 2015, transient cerebral ischemia, and essential hypertension. Tr. 363.

### C. Dr. Thomas Staats

The agency referred Plaintiff for a psychological evaluation by Thomas Staats, Ph.D. Tr. 461-67. The examination was done in March 2020, several months after the end of Plaintiff's insured status in December 2018. Plaintiff reported that he was unable to work due to spasms in his left hand following two "light strokes." (Dr. Staats noted that at least one of the stokes was a transient ischemic attack.) Plaintiff also reported episodic pain from arthritis. He said that pain in his left ankle was a nine out of ten on the pain scale. Plaintiff denied any current symptoms related to schizophrenia. He reported

suffering from Major Depressive Disorder and Generalized Anxiety Disorder, but he was not taking medication or involved in therapy for those diagnoses. Tr. 462.

Dr. Staats offered a Medical Source Statement in which he found that Plaintiff had moderate problems remembering and handling complex instructions and completing complex tasks. Tr. 465. Persistence from a cognitive standpoint was assessed to be poor, and sustained effort was depicted as variable. T 465. Regarding social interaction, Dr. Staats stated:

> There was a reported history of problems interacting with supervisors. He reported no problems with increased frustration and annoyance. Social interaction with this examiner was marginal. There is an intermediate likelihood that he would show problematic behaviors in a work setting in the form of anxiety, memory problems, episodic pain, easy fatigability, difficulty completing tasks, need for reminders and redirection, depression, attention/concentration problems, decreased use of left hand, fear of falling, and left hemiparesis.

Tr. 466. Dr. Staats opined that "ability to maintain reliable attendance is equivocal." Tr. 466.

### D. Dr. Heath Burchfield

Dr. Burchfield is a family medicine doctor who treated Plaintiff beginning in April 2020. Tr. 1698. Dr. Burchfield submitted a treating source statement in April 2021 in which he opined that Plaintiff would likely be off-task 20% of a typical workday. He estimated that Plaintiff would be absent from work two days per month as result of his impairments. He indicated that Plaintiff could frequently lift and carry up to 20 pounds, could sit for eight hours, and could stand for 4 hours in an eight-hour workday. He noted that Plaintiff did not require the use of a cane. Tr. 1698-1700.

**The Five-Step Evaluation Process**

The Social Security Act defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. The regulations set forth a five-step sequential analysis, on which the claimant bears the burden of proof on the first four steps, but the Commissioner bears the burden on the fifth step. Cotter v. Kijakazi, 2023 WL 2759064 (5th Cir. 2023).

The steps are (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity. Salmond v. Berryhill, 892 F.3d 812, 817 (5th Cir. 2018); Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005).

**Summary of the ALJ's Decision**

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of September 15, 2014. At step two, he found that Plaintiff had the following severe impairments: essential hypertension, schizophrenia, and vascular insult. At step three, the ALJ found that none of Plaintiff's severe impairments were so limiting as to meet or equal a listed impairment that would require a finding of disability without further assessment.

After step three, the ALJ must assess a claimant's residual functional capacity ("RFC"), which is the most the claimant can still do despite his limitations. Kneeland v.

Berryhill, 850 F.3d 749, 754 (5th Cir. 2017). The claimant's RFC is used at steps four and five to determine if the claimant can still do her past relevant work or adjust to other jobs.

The ALJ found that, while Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the evidence in the record. Regarding Plaintiff's hypertension, the ALJ noted that Plaintiff was at times noncompliant with medication. The ALJ found that Plaintiff had been noted as presenting with normal extremities without evidence of edema, and he was also noted as having normal range of motion with normal muscle tone and strength.

The ALJ discussed Plaintiff's history of schizophrenia. Plaintiff reported that medication helped his symptoms, but he was at times noncompliant with his medication. Plaintiff had at times reported experiencing a better mood, exhibited a linear thought process, and denied experiencing auditory hallucinations.

The ALJ considered the assessment of the state agency consultants, who opined that Plaintiff's impairments were not severe. The ALJ found this opinion to be unpersuasive. The ALJ considered the assessment of Dr. Staats, who opined that Plaintiff had mental limitations such as moderate problems remembering and handling complex instructions and completing complex tasks. The ALJ found this opinion somewhat persuasive because it was supported by evidence in the record. The ALJ also considered the assessment of Dr. Burchfield, who opined that Plaintiff would be off-task 20 percent of the time and have numerous physical limitations. The ALJ found this testimony unpersuasive because it was

from an exam three years after the date last insured and did not assess Plaintiff's condition during the time he was insured.

The ALJ found that Plaintiff had an RFC to perform medium work, subject to several exertional and non-exertional limitations. He found that, due to Plaintiff's essential hypertension and vascular insult, Plaintiff would be limited to frequently climbing ramps or stairs, never climbing ropes, ladders, or scaffolds, frequently balancing, reaching overhead with the left arm, and handling and fingering with the left arm. Due to Plaintiff's schizophrenia, he would be able to understand, remember, and carry out simple routine and repetitive tasks with routing supervision. He would be able to interact frequently with supervisors and coworkers and interact occasionally with the general public.

At step four, based on the RFC and the VE's testimony, the ALJ found that Plaintiff could perform his past work as a parking lot signaler. The ALJ also made an alternative step-five finding that—considering Plaintiff's RFC, age, education, and work experience—he could perform the demands of other jobs such as laundry worker, linen room attendant, or industrial sweeper cleaner.

**Statement of Errors**

Plaintiff assigns two errors on appeal: (1) the ALJ's mental RFC determination is not supported by substantial evidence and reflects legal error because the ALJ did not properly evaluate and explain his analysis of the opinion of Dr. Staats and (2) the ALJ violated 20 C.F.R. § 404.1529 by rejecting Plaintiff's statements regarding use of a cane and lower extremity swelling without properly evaluating his statements in relation to the medical and other evidence.

**Standard of Review; Substantial Evidence**

The court reviews the Commissioner's denial of benefits "only to ascertain whether (1) the final decision is supported by substantial evidence, and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." Whitehead v. Colvin, 820 F.3d 776, 779 (5th Cir. 2016). "Substantial evidence is more than a scintilla and less than a preponderance." Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." Boyd v. Apfel, 239 F.3d 698, 704 (5th Cir. 2001).

**Analysis**

    **A. Dr. Staats' Opinion**

Plaintiff's first argument is that the ALJ did not properly explain the basis for finding the opinion of Dr. Staats to be unpersuasive. Plaintiff argues that the RFC did not include poor cognitive persistence, inability to maintain attendance, marginal ability to interact socially, and difficulty avoiding problematic behaviors, each of which Dr. Staats found limiting to some degree. Plaintiff faults the ALJ's decision for not articulating consideration of the factors of supportability and consistency when weighing Dr. Staats' opinion.

Under 20 C.F.R. § 404.1520c(b), an ALJ is required to articulate in his decision how persuasive he finds medical opinions. The regulation sets forth certain "articulation requirements" and provides that "the most important factors" are "supportability" and

"consistency." § 404.1520c(b)(2). The agency's regulations state that it "will explain how we considered the supportability and consistency factors for a medical source's medical opinions … in your determination or decision." Id.

The ALJ wrote that he had made a "careful consideration of the evidence" and had "considered the entire medical record even when not explicitly discussed." Tr. 19. He discussed medical records related to hypertension, schizophrenia, and Dr. Staats' report. The ALJ then wrote that he had "fully considered the medical opinions" and described the weight afforded each. With respect to Dr. Staats, he wrote:

> I find the assessment of the claimant provided by Doctor Thomas E Staats, PhD, somewhat persuasive. He opined that the claimant had mental limitations such as moderate problems remembering and handling complex instructions and completing complex tasks. This is *supported* by mixed cited findings from his exam of the claimant and is somewhat *consistent* with mixed mental findings across the longitudinal record of evidence. (Emphasis added.)

The plaintiff in Silva v. Kijakazi, 2023 WL 3723628 (5th Cir. 2023) made a similar argument that the ALJ did not properly articulate how a doctor's opinions were not supported by the record when the ALJ noted that some of the opinion appeared to be supported and consistent with the record, but other parts were not due to lack of a documented need for an assistive device and evidence of work activity. The Fifth Circuit said that it has "noted time and again" that an "ALJ is not always required to do an exhaustive point-by-point discussion" of the evidence he reviews. Id., citing Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007). And even if an ALJ did not address every aspect of an opinion, that does not necessarily mean that he failed to consider it. Id., citing Hammond v. Barnhart, 124 Fed. Appx. 847, 851 (5th Cir. 2005).

In <u>Silva</u>, the ALJ explained that her findings came after careful consideration of all the evidence. Because the ALJ clearly grappled with the doctor's opinions, the Fifth Circuit said that it would not second guess her decision on the matter. <u>See</u> <u>also</u> <u>Webster v. Kijakazi</u>, 19 F. 4th 715, 719 (5th Cir. 2021) (ALJ's statement that doctor's testimony was only supported by his own findings and was inconsistent with other medical records was based on substantial evidence).

The ALJ in this case stated that he had considered the entire medical record, and he specifically discussed the opinion at issue. He also articulated his assessment of the persuasiveness of the opinion, with reference to support and consistency. The ALJ's decision indicates that he did consider Dr. Staats' opinion, and his reasons for the weight afforded that opinion are sufficient under <u>Silva</u>.

Even if there were error in lack of detail in the ALJ's assessment, Plaintiff would have to show that if the ALJ offered further explanation of his consideration of the opinion that he would have adopted additional limitations. <u>Miller v. Kijakazi</u>, 2023 WL 234773 (5th Cir. 2023). As in <u>Miller</u>, the ALJ's decision makes clear that he did consider the opinion but did not find it fully persuasive. Plaintiff, as in <u>Miller</u>, does not show that if the ALJ had given further explanation that he would have adopted more limitations. That is a heavy burden, but it is precisely the burden applied in <u>Miller</u>. Plaintiff is not entitled to appellate relief on this claim.

**B. Plaintiff's Statements Re: Cane and Leg Swelling**

The ALJ wrote that, in making his RFC finding, he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the

objective medical evidence and other evidence" as required by regulations. Tr. 18. He summarized Plaintiff's testimony about his claimed limitations and found after "careful consideration of the evidence" that the medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence. Tr. 18-19.

Plaintiff argues that the ALJ's rejection of his statements regarding the use of a cane and lower extremity swelling, without a proper evaluation, was error. The applicable regulation, 20 C.F.R. § 404.1529, states that the agency will consider all symptoms and the extent to which they can reasonably be accepted as consistent with the objective evidence. The ALJ is to consider all available evidence such as medical history, medical signs, and laboratory findings. He must also consider inconsistencies in the evidence and conflicts between the claimant's statements and the remainder of the evidence.

The ALJ specifically discussed the weight he afforded Plaintiff's claims. The regulations sets forth many factors that should be considered, but "[t]he ALJ is *not* required to mechanically follow every guiding regulatory factor in articulating reasons for denying claims or weighing credibility." Clary v. Barnhart, 214 Fed. App'x 479, 482 (5th Cir. 2007), citing Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994). See also Hillman v. Barnhart, 170 Fed. Appx. 909, 913 (5th Cir. 2006) (upholding ALJ even though ALJ did not address each regulatory factor for claimant's alleged disabling pain). In Clary, the Court noted that the ALJ considered numerous medical reports, medical evidence, and the claimant's testimony. Despite the lack of articulation of every regulatory factor, the

evaluation of the claimant's credibility was deemed sufficient, particularly because the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ. Clary, supra.

The same is true of the ALJ's assessment in this case. He discussed each relevant medical opinion and outlined the medical history. He also acknowledged Plaintiff's claims in his testimony and explained why he discounted them to some extent. The discussion was adequate to withstand the limited judicial review that is allowed by law.

Plaintiff specifically faults the ALJ for not adopting his statement that he used a cane, but Plaintiff admitted that the cane was not prescribed or even used all the time. It was one that his father used and left after he died. Tr. 63. Plaintiff said that he used the cane "every now and then" if his legs had been aching. When asked if he used the cane to help him walk, he said that it "depends on if I'm going to be out there long." The ALJ asked if Plaintiff used the cane to help walk outside, and Plaintiff answered, "No, not much." Tr. 60. He said that he used it more in 2017 when he "first got out of the hospital … to get my strength back." Tr. 61.

Social Security Ruling 96-9P recognizes a medically required hand-held assistive device as an exertional limitation or restriction. It states that there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing and describing the circumstances for which it is needed. Plaintiff does not point to any evidence that his cane was medically prescribed, and his testimony indicates that it was used only occasionally. The ALJ's RFC included limits on climbing and balancing

that acknowledged Plaintiff had some difficulties with such activities. The ALJ did not commit reversible error by not assigning greater limitations due to the use of the cane.

Plaintiff also complains that the ALJ did not include in his RFC limitations associated with swelling in his legs. The ALJ asked at the 2021 hearing if "nowadays" Plaintiff had trouble with his legs swelling. Plaintiff said that he sometimes needed to "elevate my legs up when I lay down to get that fluid off." Tr. 61. He said that he used a recliner to elevate his legs after cooking or when watching television. Tr. 62. Plaintiff was asked how long he had experienced swelling on his left ankle, and he guessed that it was since his last stroke. Tr. 63. Counsel argues that Plaintiff had his last stroke before his insured status expired in 2018, but Plaintiff testified that he had an "issue" in January 2020 that resulted in a trip to the hospital, numbness in his left arm and leg, and slurred speech. The ALJ described it as a mini-stroke or TIA. Plaintiff said that he had problems with his ankle in 2017, but it didn't really get bad until January 2020. Tr. 51-52. Given this testimony that the swelling problem was primarily experienced after the insured period, the ALJ did not commit reversible error by not including in the RFC greater limitations associated with swelling in the legs.

Accordingly, it is recommended that the Commissioner's decision be affirmed.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another

party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 31st day of July, 2023.

_____
Mark L. Hornsby
U.S. Magistrate Judge